**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melanie Ann Hansel,<br><br>             Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>             Defendant. | No. CV-21-00195-PHX-SPL<br><br>**ORDER** |

Plaintiff Melanie Ann Hansel challenges the denial of her Application for Disability Insurance Benefits under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant's Response Brief (Doc. 19, Def. Br.), and Plaintiff's Reply (Doc. 20, Reply). The Court has reviewed the briefs and Administrative Record. (Doc. 14, AR.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for calculation of benefits.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits in December 2017 alleging disability beginning September 2017. (*E.g.*, AR. at 21, 238-39, 272.) The Social Security Administration ("SSA") denied Plaintiff's claim at the initial and reconsideration levels of administrative review. (AR. at 153-56, 158-161.) Plaintiff timely requested an administrative hearing. (AR. at 162-63.) ALJ Matthew Dawson conducted a telephonic

hearing on June 25, 2020. (AR. at 42-94.) At that hearing, Plaintiff testified under examination by her attorney and the ALJ. (AR. at 52-87.) Vocational Expert ("VE") Valerie Williams also testified at the hearing. (AR. at 87-93.) ALJ Dawson issued a written decision denying Plaintiff's claim on December 9, 2020. (AR. at 21-39.) The Social Security Appeals Council upheld the ALJ's denial in a letter dated December 9, 2020 (AR. at 1-6), and Plaintiff sought judicial review on February 5, 2021. (Doc. 1.)

## II. SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

## III. DISCUSSION

Plaintiff presents three issues on appeal: (1) whether the ALJ provided clear, convincing reasons to reject Plaintiff's symptom testimony (Pl. Br. at 10-17); (2) whether the ALJ provided specific, legitimate reasons for rejecting the opinions of Plaintiff's

treating and examining physicians (Pl. Br. at 17-24); and (3) whether the ALJ erred in finding Plaintiff could return to her past relevant work as performed. (Pl. Br. at 24-25.)

### a. The ALJ did not provide clear, convincing reasons for rejecting Plaintiff's symptom testimony.

Absent evidence of malingering, an ALJ must cite "specific, clear and convincing reasons" for rejecting a claimant's symptom testimony.[1] *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations omitted). An ALJ may not reject symptom testimony solely because of a lack of medical evidence to fully corroborate the extent or severity of a reported symptom, such as pain. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). The ALJ may reject symptom testimony by utilizing "ordinary techniques of credibility evaluation" such as considering inconsistencies between a claimant's testimony and prior statements. *Burch*, 400 F.3d at 680. An ALJ may discredit a claimant's symptom testimony if she engages in daily activities transferable to the workplace. *Id.* at 681 ("The ALJ was permitted to consider daily living activities in his credibility analysis. As this Court previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.") (citations omitted). Importantly, however, "[o]nly if the level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [a claimant's] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Moreover, in mental health cases with periods of improvement and decompensation, "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "While ALJs obviously must rely on examples to show why

---

[1] It must first be established whether the claimant presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). This is not at issue here.

- 3 -

they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018 (emphasis in original, quotations omitted).

The ALJ identified the following reasons for rejecting Plaintiff's symptom testimony. The Court deems each reason insufficient or unsupported by substantial evidence.

(1) **Plaintiff's daily activities.**

The ALJ reasoned Plaintiff's statements "about the intensity, persistence and limiting effects of his or her symptoms are inconsistent because she has engaged in greater levels of activity than alleged." (AR. at 28.) The ALJ cited, for instance, Plaintiff's ability to run on a treadmill, lift 15-to-20-pound weights, camp, play sports, complete high school despite previously receiving special education, perform activities of self-care, manage her finances, attend bible study, travel on a limited basis, "drive almost daily," go to restaurants and church, cook, clean the household, care for pets, play games on her phone, and shop online. (AR. at 28.) But the ALJ overlooked or disregarded testimony and other evidence diminishing the importance of Plaintiff's reported daily activities; consequently, the Court finds these specific reported activities do not meet the clear and convincing standard.

The ALJ asserted Plaintiff ran "up to 4 miles on a treadmill 4 times a week" and lifted 15-to-20-pound weights. (AR. at 28.) Plaintiff testified she *walked* on the treadmill at low rates of speed (AR. at 83-84), that this happened twice per week for about 45 minutes, and that she had 10 and 15-pound weights but had not lifted weights since the previous October—approximately nine months before the hearing (AR. at 71-72.) Elsewhere in the record, Plaintiff expressed a desire to use the treadmill more, but did not reveal how long or how vigorously she exercised. (AR. at 532, 573.) Plaintiff's use of the treadmill precipitated a myocardial infarction in September 2018. (AR. at 496.)

The ALJ believed Plaintiff enjoyed camping and sports (AR. at 28), but Plaintiff denied any camping since childhood (AR. at 71) and the record the ALJ cited speaks nothing of camping or outdoors activity. (AR. at 557.) In an "Interest Checklist" Plaintiff

completed during her Occupational Therapy, she indicated no interest in camping. (AR. at 1230.) Responding to whether she currently participated in such activity, Plaintiff indicated both yes and no. (AR. at 1230.) The same form shows Plaintiff had "some" interest in sports and stated she participated in sports (AR. at 1230), but the form provides no other information (i.e., which sports she played and the level of her participation), and the ALJ elicited no further testimony on this point.

Plaintiff at various times stated she was independent in self-care (AR. at 480) and that she could manage her own finances (AR. at 313, 480), attend bible study (AR. at 1139), take a family vacation (AR. at 76-77), go to restaurants, cook, clean, and take care of a dog and cat. (AR. at 310-12, 480, 1230). The Court finds these activities do not rise to the clear-and-convincing level on this record. Plaintiff testified her husband does his share of the cooking and most of the shopping recently. (AR. at 67-68.) Plaintiff consistently reported her husband assists with household chores and errands, including tending to the pets.[2] Plaintiff testified she suffered a panic attack while attending bible study. (AR. at 85.) Plaintiff previously stated she shopped and went to church less since her disability began and that she needed reminders for medical appointments. (AR. at 313.)

Home activities are often not "easily transferable" to a work environment because of a lack of opportunities to rest, take medications, or isolate. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Reddick*, 157 F.3d at 722 ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") (citations omitted). A Plaintiff's ability to perform limited activities in a controlled, low-stress environment or on her own terms does not convincingly undermine her symptom testimony. Plaintiff testified she is perfectly capable of some degree of cleaning, cooking, and shopping, and online banking. (AR. at

---

[2] Plaintiff testified her husband does most of the shopping, but she can go out about once a week. (AR. at 67-68.) In March 2018 she told a provider her husband helps around the house when she is tired or anxious. (AR. at 533.) In April 2019 she reported to a provider she could shop, but sometimes forgot items; clean the house; and sometimes prepare meals. (AR. at 930.) At her hearing, she testified her husband helps with the household cleaning (AR. at 66) and does most of the grocery shopping (AR. at 67.) Plaintiff previously stated her husband assists with caring for the pets. (AR. at 310.)

67-68, 70.) To constitute a clear, convincing reason, the cited activities must contradict symptom testimony, *Lingenfelter*, 504 F.3d at 1040, or be transferable to the workplace, *Burch*, 400 F.3d at 681 (citations omitted); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Disability does not require total incapacitation. *Fair*, 885 F.2d at 603.

Here, it is not clear to the Court that Plaintiff's reported activities undermine her symptom testimony. She freely admitted to some cooking, cleaning, grocery shopping, exercising, and online banking. (AR. at 67-68, 70.) She reported the same to other physicians and the SSA. (AR. at 309-317, 480, 533, 1283.) Nor is it clear that Plaintiff's daily activities are readily transferable to the workplace in this context, since she requires her husband's assistance with most of them. Consequently, the Court deems this reason insufficient.

(2) **Normal mental status examinations.**

The ALJ generally alluded to "normal mental status signs" and "intact insight and judgment" as reasons for discrediting Plaintiff's symptom testimony. (AR. at 28.) The ALJ cited the general medicine consultative exam performed by Dr. Lise LaBarre. (AR. at 457-461.) The State's Disability Determination Services retained Dr. LaBarre to perform a physical examination and assessment, not a psychological one. (AR. at 103, 110.) While Dr. LaBarre remarked Plaintiff appeared to have good reasoning and judgment and unimpaired memory, she also noted Plaintiff appeared "to have a high degree of anxiety." (AR. at 460.) She assessed Plaintiff suffered from a "[l]earning impairment, compounded over the last few years by additional stress and inappropriate work demands for this claimant," and "[m]oderately severe anxiety disorder, requiring psychiatric and psychological support on a frequent basis." (AR. at 460.)

The ALJ cited the psychological examination conducted by Dr. Michael Rabara in June 2018 (AR. at 479.) Dr. Rabara noted Plaintiff presented well with no apparent speech difficulties, average energy, and no unusual perceptual disturbances, but with an anxious mood, intense affect, and circumstantial and vague thought processes. (AR. at 481.) Dr.

Rabara assigned limitations inconsistent with gainful employment.[3]

The ALJ generally cited to Exhibit 12F—141 pages of cognitive and occupational therapy notes which do not contain clear mental status findings and do not lend clear support to his position. (AR. at 28.) Still, within these records Plaintiff's providers documented her anxious demeanor or reports of anxiety. (AR. at 548, 573, 585, 594, 623, 652.) At any rate, this Court will not pore over the record seeking evidence to support a generalized assertion. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts.")

The ALJ also cited to Plaintiff's September 2018 hospital admission, which reflected she was alert and oriented, with appropriate insight and judgment. (AR. at 1312.) Considering the entire record, however, the Court finds this is insufficient.[4] Substantial evidence is relevant evidence that a reasonable person might accept as adequate considering the *record as a whole*, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), and an ALJ may not cherry-pick from the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). "A single discrepancy fails . . . to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901, 906–07 (9th Cir. 2017) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006)).

///

---

[3] At the hearing, the VE testified an individual unable to tolerate work setting changes and only frequently able to follow directions from supervisors would be unable to perform any work. (AR. at 92.) Dr. Rabara concluded Plaintiff would "have difficulty responding appropriately to supervisory criticism," "difficulty responding appropriately to work setting changes," and difficulty "completing a normal workday at a consistent pace," among other limitations. (AR. at 485.)

[4] In January 2018, as Plaintiff's psychological treatment commenced, she exhibited loud, verbose speech, a circumstantial thought process, diminished attention and concentration, an anxious, irritable mood, blunted affect, and impaired judgment and insight. (AR. at 438.) When she presented to Dr. Rosengard for treatment later that month, she exhibited a poor attention span, hyperactive motor, pressured-rambling speech, tangential thought processes, poor insight, and fair judgment. (AR. at 447.) In later evaluations with Dr. Rosengard, she showed an anxious mood and affect (AR. at 449, 466, 469, 1110), irritable behavior (AR. at 737), rambling speech (AR. at 449, 469, 737), and tangential thought processes (AR. at 449, 469, 735, 737.)

(3) **A suggestion of poor effort on testing or exaggerated symptoms.**

The ALJ impugned Plaintiff for giving "dubious" effort on testing, for providing "recited or memorized" responses, and exhibiting "learned helpless type behavior." (AR. 28-29.) The ALJ's reference to "dubious effort" comes from the September 2019 neuropsychological evaluation performed by Ted W. Etling, Psy.D. at Arizona Neurology Associates. (AR. at 1283-87.) Dr. Etling noted "sub-optimal effort" on one validity scale, but a valid "alternate task" of validity. (AR. at 1286.) Dr. Etling cited "dubious effort" on one effort of measurement and "sustained effort" on another. (AR. at 1286.) He also noted the sub-optimal effort may have related to Plaintiff's lack of visual memory skills, an area of "circumscribed impairment" for her. (AR. at 1286.) Dr. Etling further noted "an embedded indicator of effort was completely valid, and a review of [Plaintiff's] scores does not indicate an intention to perform poorly . . . ." (AR. at 1286.)

The ALJ cited Dr. Elliot Salk's opinion that Plaintiff's inability to complete a "Trails A" subtest was "highly suspect given its simplicity," but Dr. Salk made these comments in the context of explaining why additional psychometric testing was needed. (AR. at 103.) Thereafter, in June 2018, Plaintiff attended a consultative examination with Dr. Rabara at Dr. Salk's specific request. (AR. at 479-86.) Dr. Rabara noted that, during testing, Plaintiff put forth "adequate effort," and he did not discount the value of Plaintiff's scores. (AR. at 482, 484.) Dr. Rabara noted Plaintiff's "vague and poorly supported claims []were possibly recited or memorized[,]" but that Plaintiff "related more credible descriptions of recurring panic attacks; intermittent depression; as well as memory and concentration problems." (AR. at 484.) Dr. Rabara noted Plaintiff "seemed quite anxious, on edge, and sensitive to pressure and failure throughout the exam[,]" and "often talked nervously and her thoughts were quite circumstantial." (Ar. at 484.) Dr. Rabara opined elsewhere in the report that "[Plaintiff's] anxiety seemed quite genuine and intense. Her circumstantial thoughts further seemed to reflect the intensity of her anxiety." (AR.at 482.) It is noteworthy that Plaintiff did complete the Trails A subtest with Dr. Rabara and scored "within the range of significant and severe impairment." (AR. at 483.) Read in context, Dr.

Salk's opinion regarding Plaintiff's "highly suspect" testing performance does not rise to the clear-and-convincing level.

Regarding Plaintiff's so-called "learned helpless type behavior," the ALJ does not provide a specific citation to the record (AR. at 28), but upon reviewing the record, the Court notes a single instance documented by occupational therapist Emily Reilly in July 2018. (AR. at 923.) On that date, Ms. Reilly assessed that Plaintiff's "[a]nxious behavior and perseveration on topics are barriers to functional occupational performance." (AR. at 923.) She noted "environmental stressors are poorly managed and become overstimulating exhibited by tearfulness, shortness of breath, tremulous in hands and convulsive type behavior including lowering self to the floor for [approximately] 15 minutes." (AR. at 924.) The therapist noted Plaintiff's "[l]imited ability to self-regulate predictable and unpredictable stressors continue[s] to impede functional independence." (AR. at 924.) Plaintiff also had what appeared to be a significant episode of anxiety or panic with Dr. Denboer present.[5] (AR. at 924.)

There is insufficient evidence, considering the record as a whole, to support the position Plaintiff's cognitive or psychiatric limitations are feigned or exaggerated.

(4) **Test Results Show Only Low-Average Memory and Cognition, Consistent with GED Level 2 Jobs.**

The ALJ stated Plaintiff scored in the low-average range of memory and cognition consistent with GED reasoning level two jobs. (AR. at 29.) The Court acknowledges Plaintiff's intelligence and memory subtest scores varied throughout the relevant period, and that Plaintiff sometimes tested into the average range on different subtests or in different functional areas, including processing speed, auditory attention and concentration, working memory or Logical Memory subtests, and Digit Span and Symbol Search subtests. (AR. at 482, 528, 536, 915, 928, 1286.) Importantly, however, Plaintiff also exhibited low-to-profound or severe range scores at other times in frontal/executive functioning (AR. at 444, 518), impaired memory scores (AR. at 444), borderline Test of

---

[5] Dr. Denboer has consistently professed his belief Plaintiff is disabled. (AR. at 445, 488-89, 916, 922.)

Variable Attention ("TOVA") scores (AR. at 444, 528), borderline verbal comprehension, perceptual reasoning, full-scale, and general ability (AR. at 482), severe range in Hopkins Verbal Learning (AR. at 916, 928), severe range in delayed recall (AR. at 916, 928), severe range in Trails B (AR. at 927), and severe range in Brief Visuospatial Memory (AR. at 928), to say nothing of the fact Plaintiff was experiencing significant, credible symptoms of anxiety and depression throughout the relevant period. (AR. at 460, 482, 484, 492.) The Court finds the Plaintiff's "low-average" testing scores do not constitute a clear and convincing reason to reject Plaintiff's symptom testimony. Even assuming Plaintiff had no cognitive deficiency, this reason does not sufficiently account for Plaintiff's significant panic and anxiety she exhibited throughout the relevant period, which was deemed credible by her providers and independent examiners. (AR. at 482, 484.)

(5) **Plaintiff's prior ability to work while dealing with panic attacks.**

The ALJ's conclusion Plaintiff was able to work while experiencing panic attacks one-to-two times per month does not adequately represent Plaintiff's testimony by ignoring the other impairments which contribute to her overall condition. Plaintiff testified she experienced panic attacks one-to-two times per month during employment, but that other psychological factors and a cognitive impairment contribute to her current inability to work. (AR. at 81.) In her initial function report, she identified anxiety attacks, depression, ADD, and a learning disability as among the "illnesses, injuries, or conditions [that] limit [her] ability to work[.]" (AR. at 309.) Medical evidence suggests a gradual worsening of Plaintiff's anxiety symptoms or attacks (AR. at 435) and cognitive performance (AR. at 530.)[6] On this record, Plaintiff's mental health impairment pre-dating her disability onset is not a clear, convincing reason.

(6) **Her statements regarding leaving past jobs.**

The ALJ asserted Plaintiff's testimony and prior statements regarding leaving her past "laundry job" and "grocery store job" undermine her disability testimony because

---

[6] Dr. Rabara acknowledged in June 2016 that while it was unclear what had caused the exacerbation in Plaintiff's symptoms, the symptoms seemed genuine. (AR. at 484.)

"those jobs ended for reasons other than her impairments and associated restrictions and limitations." (AR. at 29.) As Plaintiff persuasively notes in her Opening Brief, however, this all occurred well before her alleged onset date. (Pl. Br. at 15.) Plaintiff's position is supported in the record. Plaintiff appeared to stop working at Safeway in 2014 or 2015. (AR. at 266-67, 282.) She stopped working at Aramark, where she washed, dried, and sorted uniforms (AR. at 304), in 2007 (AR. at 59-62, 265-66).

The Court finds the ALJ failed to cite clear, convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.[7]

**(b) Whether the ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting the opinions of treating and examining doctors.**

Under new regulations regarding the consideration of medical opinion evidence, an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). The ALJ must instead evaluate the opinion's overall persuasiveness and articulate his conclusion using two key factors: "supportability" and "consistency." 20 C.F.R. § 404.1520c(a).[8] The ALJ is not required to explain how he considered other factors—such as the nature of the relationship with the claimant; the frequency of examinations; or the doctor's specialization—unless the ALJ concludes that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical. *See* 20 C.F.R. §

---

[7] The Court need not address the ALJ's failure to discuss non-medical lay witness evidence (Pl. Br. at 15-17) since remand for payment is appropriate on other grounds (see below). The Court also need not address the ALJ's other remarks regarding Plaintiff's ability to stand or her mild gait abnormalities as they are not pertinent to the issue of Plaintiff's independent psychological or cognitive disability, and since Plaintiff's disability claim is mostly predicated upon her cognitive and mental health problems. (AR. at 309.)

[8] Regarding the supportability factor, the regulation explains the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

404.1520c(b)(3). The ALJ's analysis must be supported by substantial evidence. *See* 42 U.S.C. § 405(j); *E.g.*, *Uribe v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01690-PHX-SPL, 2022 WL 294212 (D. Ariz. Feb. 1, 2022); *Garcia v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08258-PCT-DLR, 2021 WL 5822642, at *2-3 (D. Ariz. Dec. 8, 2021).

The ALJ rejected, in part, the opinions of Drs. Michael Rabara (consultative examiner), John DenBoer (treating physician), and Richard Rosengard (treating physician), who each expressed an opinion Plaintiff is disabled, or assigned to her limitations inconsistent with gainful employment. (AR. at 29-30.) In support, the ALJ cited Plaintiff's daily activities and "mild neurocognitive limitations" or "low-average mental functioning." (AR. at 29-30.)

The Court finds Plaintiff's limited daily activities are not a sufficient basis to reject these physicians' opinions.[9] *See Ghanim v. Colvin,* 763 F.3d at 1162 (holding daily activities insufficient to reject treating doctors' assessments where the claimant relied on a caretaker, struggled in social settings, and "limited himself to low-stress environments.") As explained in greater detail above, Plaintiff's ability to keep up the household and run routine errands, go on a rare family vacation, manage her finances, and perform other routine daily tasks was not without difficulty and often was dependent upon her husband's assistance to some extent. (AR. at 66-68, 75, 309-317.) The ALJ also does not explain the relevance of these daily activities vis-à-vis the limitations these physicians assigned. For instance, the record does not establish that Plaintiff's daily activities are inconsistent with Dr. Rabara's conclusion Plaintiff would have difficulty responding to supervisors. (AR. at 30.) As such, Plaintiff's daily activities do not amount to substantial evidence sufficient to rebut the results of the cognitive testing and psychiatric examinations which underlie the opinions of her treating physicians and the consultative examiner. Although it is true that Plaintiff reported some independent functionality to several providers and examiners, these limited abilities are not inconsistent with the limitations each assigned. (AR. at 533, 480, 930.)

---

[9] The Court need not address the opinion of Dr. LaBarre, whom the ALJ found "generally persuasive." (AR. at 29.)

While the ALJ suggests that the numerous neuropsychological and psychometric tests are consistent with only "mild neurocognitive limitations" or "low-average mental functioning," the full record does not support this characterization. Dr. Rabara indicated Plaintiff scored within the Borderline Range and within the lowest 10th percentile in four different adult intelligence scales and two different memory indices while documenting "genuine and intense" anxiety. (AR. at 482.) Dr. Rabara noted Plaintiff "related more credible descriptions of recurring panic attacks; intermittent depression; as well as memory and concentration problems." (AR. at 484.) Noting Plaintiff "is highly anxious and easily overwhelmed," he opined "[s]he will have difficulty responding appropriately to work setting changes." (AR. at 485.) Noting "[s]he is sensitive to failure and pressure[, s]he will have difficulty responding appropriately to supervisory criticism." (AR. at 485.) Dr. Rabara opined Plaintiff "will have difficulty making simple decisions, carrying out detailed instructions, sustaining her concentration, and completing a normal workday at a consistent pace." (AR. at 485.)

While the ALJ found these cognitive limitations were only just below average or mild, Dr. DenBoer characterized them at one time as "significant, diverse, and concerning." (AR. at 445.) The ALJ's statement "Dr. Denboer's own progress notes show the claimant exhibited low-average mental functioning" is not completely accurate. (AR. at 30.) Plaintiff tested into the average categories on certain subtests, but also scored in impaired ranges on others. (AR. at 444-45, 524-25, 528-29, 536, 915-16, 927-28.) The Court acknowledges Dr. Etling noted average range intelligence in some areas, borderline-impaired range in some areas, and impaired to borderline-impaired performance in other areas. (AR. at 1286.) On the whole, however, the ALJ's characterization of these test scores as only mild or low-average is not an adequate basis to reject them given Plaintiff's significantly diminished functioning in the other categories and her credible psychiatric complaints. The physicians who administered this testing (those who assessed workplace restrictions) construed Plaintiff's testing scores as debilitating or consistent with significant

impairment (AR. at 485, 488-89, 916).[10] Even if the Court was to assume Plaintiff's overall cognitive functioning fell into the average range as the ALJ concluded, there remains the fact of Plaintiff's documented panic attacks, anxiety, and depression, which have been widely deemed as credible and severe. (AR. at 482-84, 492.) Despite the ALJ's citation to a few benign or equivocal exams and the overbroad citation to the record as noted above, the ALJ did not adequately account for Plaintiff's symptoms of anxiety and panic in his decision to reject the opinions of these three doctors.[11] The Court finds the ALJ did not provide legally sufficient reasons supported by substantial evidence for rejecting any of these opinions.

**(c) Credit-as-true applies.**

The credit-as-true rule applies when three elements are satisfied: (1) the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence; (2) the record must be fully developed; (3) there must be no outstanding issues that must be resolved before a determination of disability can be made; and (4) further administrative proceedings would not be useful. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). If these elements are satisfied, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating physicians, the consultative examiner, and Plaintiff's symptom testimony. The Court sees no significant conflicts or ambiguities left to resolve. Considering the VE's testimony that an individual incapable of tolerating workplace

---

[10] As noted above, the VE testified hypothetical limitations apparently modeled after Dr. Rabara's assigned limitations in responding to work setting changes and supervisory criticism would preclude work. (AR. at 92.)

[11] Since remand for payment is appropriate, the Court need not address Plaintiff's argument the ALJ erred by finding she could perform past relevant work as generally performed. (Pl. Br. at 24-25.)

changes and only frequently following directions from supervisors would be unemployable (AR. at 92), consistent with those limitations Dr. Rabara assigned (AR. at 485), the Court is left with no serious doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022–23; *Lingenfelter*, 504 F.3d at 1040–41 & n.12. This matter is remanded for calculation and payment of benefits.

**IT IS THEREFORE ORDERED** the the December 9, 2020 decision of the Administrative Law Judge is **reversed**. (AR. at 21-39.)

**IT IS FURTHER ORDERED** that this case is **remanded** to the Social Security Administration for a calculation of benefits beginning September 7, 2017.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment consistent with this Order and **terminate** this case.

Dated this 7th day of March, 2022.

Honorable Steven P. Logan
United States District Judge